

FILED by _UM_ D.C.

JAN 1 6 2018

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISRICT OF FLORIDA

PARRISH DECOSTA MILLER, JR,

                Plaintiff,

v.

MATTHEW BOYD—POLICE CHIEF,

OFFICER CARLOS VELEZ, and OFFICER

MICHAEL WAGONER,

                Defendants

_____/

CASE NO._____

To be supplied by the Court

**JURY TRIAL DEMAND**

## CIVIL RIGHTS COMPLAINT

### 42 U.S.C. SECTION 1983

COMES NOW the plaintiff, Parrish D. Miller, Jr., who is proceeding in this cause without the representation of counsel, in **pro se**, pursuant to 42 U.S.C. § 1983 of the Civil Rights Act, and respectfully invokes the rule established in *Haines v. Kerner*, 404 U.S. 519 (1972) (holding pro se litigants to "less stringent standards than those applied to attorneys"), and submit the following Memorandum of Law in Support of his complaint. *These defendants are charged in pending lawsuit,* infra.

This is an action being filed under § 1983 of the Civil Rights Act ("the Act"), alleging violations of plaintiff's rights to be free un from lawful deprivation of his liberty in violation of the Florida and Federal Due Process Clauses, Art. 1, § 9, and U.S. Const. Amend. 5 and/or 14, § 1, respectively, and Amend. 4, seeking monetary damages, injunctive relief, and declaratory judgment, in addition to a **trial by jury**.

## JURISDICTION

The jurisdiction of this arises under 28 U.S.C. § 1343(3).

## PARTIES INVOLVED

1. Plaintiff, Parrish D. Miller, Jr., resides at 19270 N.W. 33rd Court, Miami, Gardens, Florida, 33056.

2. Defendant, Chief of Police, Matthew Boyd, is located at 18611 N.W. 27th Avenue, Miami Gardens, Florida, 33056, and was responsible for the actions of his agents, their training and management at all times relevant to this claim. The Defendant is being sued in his individual and official capacities.

3. Defendant, Carlos Velez, was an arresting officer at all times relevant

to this matter. He is being sued in his individual and official capacities for violations of Plaintiff's civil and constitutional rights as stated above. <u>Same address as above.</u>

relevant to this matter. He is being sued in his individual and official capacities for

4. Defendant, Officer Michael Wagoner, was an arresting officer at all times

2

violations of Plaintiff's civil and constitutional rights as stated above. <u>Same address.</u>

5. Each of the defendants acted under the "color of state law" during all times

relevant to this matter; and, as stated, all have the same address as defendant Boyd.

6. Defendants' conduct, at all times relevant to this matter, deprived Plaintiff

of basic, fundamental, civil, and constitutional rights, privileges, and/or immunities secured by both the Florida and United States Constitutions.

7. Plaintiff, at all times relevant to this matter, was unlawfully placed in the

custody, control, and care of Defendants.

## FACTS

8. On January 20, 2013, while traveling on the public highway, the Plaintiff,

while driving a lawfully registered vehicle was stopped by Defendants Velez and

Wagoner during an alleged traffic stop [violation] in Miami Gardens, Florida.

9. During the alleged traffic stop, Defendant Wagoner approached Plaintiff's

vehicle and inquired whether there were any weapons in the vehicle.

10. Plaintiff inquired of the reasoning for the stop, for which each defendant

displayed displeasure, at any questioning, and directed plaintiff, in harsh terms, "[not to ask any] questions just do as you are told."

3

11. Plaintiff, then, inquired of the defendants, whether "I am being detained

or under arrest for something, and if so, what?"

12. Each Defendant, expressing extreme anger and/or frustration with the

Plaintiff, again asked whether any weapons were present in the vehicle, to which

Plaintiff subsequently answered in the affirmative.

13. Plaintiff was thereafter asked for his driver license, and soon informed by

the Defendants that his driver license was "suspended," the firearm was seized and Plaintiff was informed that he was being placed under arrest for "carrying a concealed firearm and driving with a suspended driver license."

14. Plaintiff was led from his vehicle and placed in handcuffs, by each of the Defendants, against his protests that his driver license was not suspended and that he had a license to carry his firearm as the Defendants executed an unlawful search of Plaintiff's vehicle, again, against his protests.

15. Plaintiff was subsequently transferred to Dade County Jail where he was booked and charged with the aforementioned *two* offenses; and was *never* charged with any other violations, traffic or otherwise. (See Exhibit A) (copy of Complaint/Arrest Affidavit).

4

16. Plaintiff's vehicle was seized and impounded by Defendants as a direct result of Plaintiff's arrest, and Plaintiff was required to post bail in order to be released from the said arrest, resulting into financial loss.

17. On February 19, 2013, the charged violation, for "carrying a concealed firearm," was dismissed as "No Action" or otherwise dismissed without Plaintiff ever having to appear for trial. (See Exhibit B) (copy of disposition obtained December 29, 2013).

18. Plaintiff, subsequent to his release from imprisonment, was compelled to

pay the costs to have his vehicle released from impoundment, and suffered further

financial losses.

19. As a direct result of the above arrest, Plaintiff endured past, present, and

future financial losses including job opportunities, due to having said criminal

record appear during employer background checks.

20. Plaintiff, due to no fault of his own, was prevented from obtaining any of

the information, relevant, to this claim, in a timely manner, where all efforts to do

so was thwarted by a, now, obvious typographical error, inter alia, that prevented

Plaintiff, or the Clerk of Court, from ascertaining the disposition of this case, as

shown below. This suit follows.

5

## CLAIMS
## FIRST CAUSE OF ACTION

21. The actions of the defendant, Carlos Velez, as stated in paragraphs 5

through 19 of this complaint, denied and/or deprived plaintiff of his rights to be

free from unreasonable restraints on his freedom, and from unreasonable searches

and seizures of his property, and loss of financial gain, in violation of the laws of

the State of Florida, supra, and the United States Constitution, supra. The

defendant knew, or should have known, that his actions were a violation of plaintiff's rights under the Florida and Federal Constitutions against the unreasonable and unlawful arrest, search, and seizure of personal property when he arrested, or caused the arrest of, the plaintiff without probable cause. Then, after doing so, plaintiff, without having probable cause to be arrested by defendant, was released without the charge or allegation requiring adjudication by any court of law, or judge, after being unlawfully arrested. Plaintiff, thus, was *kidnapped* without cause by the Defendant.

## SECOND CAUSE OF ACTION

22. The claims asserted in paragraph 21, above, are incorporated herein, *in its*

*entirety*, as though alleged hereat, as it refers to the defendant, Officer Michael Wagoner.

6

## THIRD CAUSE OF ACTION

23. The actions and/or inactions of the defendant, Chief Matthew Boyd, at all

times relevant to this matter, were either the direct or indirect cause of plaintiff's unlawful harm, arrest, humiliation, kidnapping, searches and seizure of personal

property, and financial harm and losses. Defendant Boyd's knowledge of the history of abuses, in terms of his agents' unlawful acts of stopping pedestrians and/or citizens, either walking and/or driving vehicles, for the sole purpose of violating the rights of those individuals in an attempt to discover evidence of a crime, while taking no corrective actions, makes the defendant liable for the acts of his agents under the doctrine of *respondeat superior*. *Sanders v. English*, infra.

## MEMORANDUM OF LAW
## IN SUPPORT OF CIVIL RIGHTS COMPLAINT

### ARGUMENT AND CITATION OF AUTHORITY:

The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under 28 U.S.C. §1915(e)(2)(B) or Fed. R. Civ. P. 12(b)(6) or (c). See *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) ("The language of section 1915(e)(2)(B)(ii) tracks the language of the Federal

7

Rule of Civil Procedure 12(b)(6)"). When reviewing complaints pursuant to 28 U.S.C. §1915(e)(2)(B), the Court must apply the standard of review set forth in Fed. R. Civ. P. 12(b)(6), and the Court must accept as true the factual allegations in

the complaint and all reasonable inferences that can be drawn therefrom. In order to state a claim, a plaintiff must show that conduct under *color of state law*, complained of in the civil rights suit, violated the plaintiff's rights, privileges, or immunities under the Constitution or laws of the United States. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir. 1985).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985).

## DEFENDANTS VELEZ and WAGONER:

Accepting as true, as it must, the factual allegations asserted against these two defendants, in paragraphs 5-19 above, plaintiff contends that his rights, as secured

8

by the Constitutions, were violated when the defendants, who knew or should have

known, that no probable cause or reasonable suspicion existed to *arrest* plaintiff and to search and seize his vehicle.

Here, the defendants, acting on *pure speculation and/or a hunch*, that the plaintiff was involved in some form of criminal conduct, caused plaintiff to stop his vehicle, by pulling him over for an alleged violation— *"a tag light being out"* *for which plaintiff was never cited*—with the sole intent to search the plaintiff and his vehicle for evidence of a crime, in violation of plaintiff's rights, presumably for narcotics. This police conduct, in spite of then and now existing well-settled law— that a police officer cannot, based upon a *bare* suspicion of criminal conduct or a *hunch*, stop a person and frisk him/her in search of evidence of a crime and then justify the stop by evidence later discovered—makes these police officers liable for their acts. See *Terry v. Ohio*, 392 U.S. 1 (1968).

Because, here, unlike in *Terry*, the plaintiff was not the suspect of criminal activity, but, rather, allegedly a traffic violator regarding the *tag light being out,"* which, as shown below, was also a *pretext* to disguise the true motives, the defendants had no basis in law or in fact to stop, detain, or arrest plaintiff. This is shown by the fact that there was never any mention, beyond the bare mention of the

9

"*tag light being out*" in the <u>arrest report</u> to justify the stop; in addition to the fact that the cited charges themselves were **dismissed** *prior to any court proceedings* in the matter, and that there was no written warning to substantiate the claim regarding the tag light [allegedly] being out.

The Supreme Court, in *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987), made clear that in order to overcome a claim of "qualified immunity," a civil rights plaintiff must show that the right that was allegedly violated was clearly established at the time of the defendant's conduct.

> "[Q]ualified immunity [is] defeated if an official knew or should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the [his] action with the malicious intention to cause a deprivation of constitutional rights or other injury."

*Wood v. Strickland*, 420 U.S. 308, 322, 43 L. Ed 2d 214, 95 S. Ct. 992 (1975).

It was well-settled law, at the time of this occurrence, that a police officer could not arrest a citizen for a "tag light being out," or for "having a valid driver license and operating a lawful motor vehicle," or for "having a lawfully concealed weapon" in his vehicle," or for "asking an officer as to why he was stopped." This was also apparent in light of the "false arrest" lawsuits that had previously been filed against defendant Noel Israel, as shown below. The defendants, Velez and Wagoner

10

are liable for the harm and injury suffered by plaintiff as a direct result of their violations of his civil and constitutional rights.

The Due Process Clause of the Florida Constitution, Art. 1, § 9, outlines the protections provided to the citizens of the State of Florida, and/or visitors thereof, by asserting that: "No person shall be deprived of life, liberty, or property without due process of law." Due process has been defined, among other things, as fairness and "the principle that an individual cannot be deprived of … liberty …without appropriate legal procedures and safeguards." It includes the "*arbitrary denial of liberty*," as was done to the plaintiff by these defendants. Moreover, the due process clause provides that the plaintiff, here, had every right to ask the arresting officer the reason for the traffic stop, without being subjected to a false arrest as a result thereof.

The Sixth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, see *In re Oliver*, 333 U.S. 257, 273-74 (1948), guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of charges against him. See also, *Kulko v. Superior Court*, 436 U.S. 84 (1978) (defining due process with only one word, "fairness").

## DEFENDANT NOEL PRATT:

Defendant Boyd is being sued in his individual and official capacities as Chief

11

of Miami Gardens Police Department for the acts of his subordinates, defendants Velez and Wagoner, in that the defendant knew, or should have known of the unlawful tactics of the defendants in violating the rights of the People and failing to take any corrective actions or to *retrain* the defendants when many lawsuits, for false arrest, have clearly placed the defendant on proper notice of the violations of the citizens' rights by his agents.

This defendant, Matthew Boyd, had previously been in these shoes regarding the *unlawful arrest by his agents*, but had, obviously, failed to rectify the wrongdoings by turning a blind eye. This is demonstrated, not only by the Chief's resignation—amid allegations that officers under his command have systematically committed harassment, intimidation and civil rights violations—but also by lawsuits filed against him by Alex Saleh, Earl Sampson, and eleven other citizens for the same type of civil rights violations alleged herein by Mr. Miller, the plaintiff. See *Sampson v. City of Miami Gardens*, 1:13-cv-24312-DLG (S.D. Fla.); compare with

_Gary Kollin v. Sheriff [Scott Israel]_ for "false arrest," (citation to be supplied);

_Jorge Rodriguez & Maria Rentel v. Sheriff [Scott Israel]_, for "false arrest," Case

No. 11-61776-cv-WJZ (settled for $350,000); and _Augello v. Sheriff [Scott Israel]_,

for "false arrest," Case No. 0:2012-cv-61240, among others. Yet, the defendant

Boyd had a _de_

12

_facto_ policy of covering up the police misconduct by failing to properly investigate

officers alleged misconduct. See _Rosado v. City of Miami Gardens_, 16-cv-24922-

Cooke (**former Miami Gardens Police Officer –Whistle Blower**). The acts of the

defendant created, tolerated, and caused a pattern of misconduct by his agents, as

shown in the instant case with the plaintiff's unlawful arrest and subsequent release

with being formally charged. The defendant, despite the numerous lawsuits filed

against him, as a result of his agents' unlawful arrests, refused to retrain them, or to

discipline them for their wrongs, which certainly did encourage the continuous

civil and/or constitutional violations of the rights of the citizens.

The language of §1983 requires a degree of causation as an element of

individual liability, but it does not specifically require "personal participation."

Personal participation is only one of several theories which can be used to

established causation. Whether the complaint adequately alleges the requisite

causal connection between the supervisory defendants' actions and a deprivation of the plaintiff's constitutional rights is the proper question. See *Anderson v. Nosser*, 456 F. 2d 835 (5th Cir.), cert. denied, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed. 2d 89 (1972).

Another theory which includes the requisite causation is that a supervisory defendant is subject to §1983 liability when he breaches a duty imposed by state or

13

local law, and this breach causes plaintiff's constitutional injury. See generally, also *Roberts v. Williams*, 456 F. 2d 819 (5th Cir.), cert. denied, 404 U.S. 866, 92 S.Ct. 83, 30 L. Ed 2d 110 (1971); see also, *Beverly v. Morris*, 470 F. 2d 1356 (5th Cir. 1972); and *Chestnut v. City of Quincy*, 513 F. 2d 91 (5th Cir. 1975), where the Court held the Police Chief responsible for the conduct of his subordinates where he had notice of the past incidents and failed, as here, to prevent a reoccurrence. Finding the misconduct properly states a claim against the [Chief of Police] under §1983.

Needless to say, the law is clear that "false arrest," "illegal detention," "false imprisonment," and "malicious prosecution," are all recognized as causes of action under §1983. See, for example, *Sanders v. English*, 950 F. 2d 1152 (5th Cir. 1992). On these basis, the plaintiff contends that he was the victim of a false arrest, illegal

detention, or a kidnapping, all causing harm, humiliation, embarrassment, loss of

finances, and further damage to his reputation that, itself, was/is unlawful.

## REQUESTED RELIEF

1. **DECLARATORY JUDGMENT** that the actions and/or inactions of

   each

defendant, as described above, violated plaintiff's rights to be free from unlawful

deprivation of his liberty, freedom, by being arrested by defendants on January 20,

2013; by being deprived of his property without due process of law, causing him to

14

be without it as well as the loss of finances in paying to have it towed and released,

in addition to the other financial hardships imposed upon him as a direct result of

the actions and/or inactions of then defendants.

2. COMPENSATORY DAMAGES in the following amounts:

   (a) $500,000.00 against **each** named defendant officer for pain,
       suffering, financial losses, embarrassment, humiliation, and
       false arrest;

   (b) $500,00.00 against Matthew Boyd, for pain, suffering,
       financial losses, embarrassment, humiliation, and false arrest;

3. PUNITIVE DAMAGES in the following amounts:

(a) $1,000,000 against **each** named defendant as well as against Chief Matthew Boyd, to prevent future occurrences and to send a message that this type of misconduct will not be condoned.

4. Any further and other relief to which the plaintiff is or may be entitled.

Respectfully submitted,

*Parrish D. Miller Jr.*

Parrish D. Miller, Jr.- **Pro se**

19270 N.W. 33rd Court

Miami Gardens, Florida, 33056

SUBSCRIBED AND SWORN BEFORE

ME, A NOTARY PUBLIC, ON THIS

___11___ DAY OF __1__ 20 _18_

15

NOTARY PUBLIC IN AND FOR

THE STATE OF FLORIDA

My Commission Expires On:  9/7/19

_____

Notary Public



JESSICA SAMSON
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF915882
Expires 9/7/2019